Decided 26 June, 1902.
### RICHARDS' ESTATE.

From Multnomah: JOHN B. CLELAND, Judge.

This was an appeal from an order of the circuit court sustaining an order of the county court directing the sale of certain realty belonging to the estate of Solomon Richards.

AFFIRMED.

*Messrs. George W. P. Joseph* and *H. B. Nicholas* for appellant.

*Messrs. Paxton, Beach & Simon* for respondents.

Pursuant to the stipulation of the parties, the decree appealed from was affirmed without costs to either party.

AFFIRMED.

Argued 3 February; decided 16 February, 1903.
### PERELLI *v.* CANDIANI.
[71 Pac. 537.]

From Lane: JAMES W. HAMILTON, Judge.

Suit by G. B. Perelli against C. F. Candiani and Cæsar Marco to establish an interest in a mine, resulting in a decree for defendants, from which plaintiff appeals.        AFFIRMED.

For appellant there was a brief over the names of *Mitchell & Tanner,* with an oral argument by *Mr. Albert H. Tanner.*

For respondents there was a brief over the names of *L. Bilyeu* and *Thompson & Hardy,* with an oral argument by *Mr. Bilyeu* and *Mr. C. A. Hardy.*

MR. JUSTICE BEAN delivered the opinion.

This is a suit to establish an interest in a mining claim. In November, 1899, the plaintiff and defendant Candiani, residents of Portland, jointly located a mining claim in the Blue River Mining District, in Lane County, designating it as the "Doctor Lode." On February 14, 1900, Candiani posted a

42 OR.—40

new notice of location in his own name, which he had recorded February 16th, in order to prevent a possible forfeiture or an attempted relocation by some one else. On the 13th of March he and plaintiff and defendant Marco entered into an agreement in writing, by which they associated themselves together as partners for the purpose of developing and working the mine. Under this agreement, they were to share alike in the profits and losses of the venture, and neither was to put into the enterprise any greater sum than $200, except upon the mutual agreement of all. On the same day Candiani conveyed by deed to the plaintiff and Marco each an undivided one third of the property for a stated consideration of $200, but no money was paid by either of them therefor, or for any other purpose, except the $200 put into the partnership, which was used in developing and working the mine. They thereafter proceeded to occupy and work on the claim until about the 18th of October, 1900, when plaintiff sold and conveyed to one Descamps an undivided one third interest therein, and thereafter ceased to have anything more to do with the property. In July, 1901, he commenced this suit to establish a right to an undivided one half of the claim, on the ground that the original location made by himself and Candiani was made by them as tenants in common, and that the subsequent location by Candiani inured to his benefit as a cotenant. No rights are claimed by the defense on account of the second location, but it is insisted that the mine was originally located by the plaintiff and Candiani under an agreement that it should belong to them and the defendant Marco in equal parts, that the subsequent partnership agreement was for the purpose of carrying out their original contract, and that by selling and disposing of a one third thereof the plaintiff devested himself of all interest therein. The complaint alleges, and the plaintiff testified, that he is the owner of an undivided one half of the property in controversy; but, under any view, his interest cannot possibly exceed a sixth. There is but one mining claim or tract of land involved in the case. He does not make any pretense that he ever owned more than an undivided one half thereof, and, as

he sold and conveyed to Descamps one third, his remaining interest cannot exceed a sixth.    And whether he owns such an interest or not depends upon the agreement under which the claim was originally located.

The second location by the defendant Candiani necessarily inured, under the law, to the benefit of the parties interested with him in the property, so we shall confine our examination to that point.    The plaintiff testified that he was an experienced miner, and that it was agreed between himself and Candiani that they should go to the Blue River Mining District, and locate there one or more mining claims, the plaintiff to put in his knowledge and experience, and Candiani to pay all expenses, and that they should own the claims so located share and share alike; that, in pursuance of this agreement, the mine now in controversy was located; that, after the second location by Candiani, he claimed to own the entire mine; and that plaintiff was compelled to and did pay him $200 for a one third interest in the second location, but he did not intend to abandon any of his rights under the first.    Candiani testified, on the other hand, that the understanding and agreement under which the first location was made was that defendant Marco should be an equal owner with himself and the plaintiff in the claim.    There is thus a direct conflict in the testimony of the witnesses; but, in our opinion, the subsequent conduct of the parties supports the theory of the defendants.    The partnership agreement, the fact that the mine was occupied and worked by the three jointly, and the plaintiff's action after he had sold one third to Descamps, all go to show that his interest was understood by himself and the other parties to be a third. At the time he sold to Descamps, he told him, so the latter testified, that he was disposing of all his interest in the Blue River Mining District because he could not get along with Candiani, and henceforth he would have nothing more to do with him. Immediately thereafter he went away from the mine, and gave it no further attention until after the defendant Candiani and his associates had developed it by the expenditure of a large sum of money, and it was reported to be very valuable.    The

plaintiff attempts to explain the partnership agreement, and his acceptance of a deed from Candiani for one third of the mine, by saying that he supposed at the time that they referred to the second location, and a different mine. But he had a copy of the second notice of location at the time the partnership agreement was entered into, and it would seem, therefore, that he must have known that it was the same property. But, whether he did or not, he shortly afterward went up to the mine, worked on it for some considerable time under the agreement, and knew that the work of developing and prospecting was being done on the mine formerly located by himself and Candiani. We think, therefore, that it is quite clear from the testimony that his understanding, as well as that of the other parties, was that his interest in the mine was limited to one third, and, having sold and disposed of it, he has no further right thereto. The decree of the court below must be affirmed.    AFFIRMED.